**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,

  v.

OLIVER HILSENRATH, and DAVID S.
KLARMAN,

          Defendants.
_____/

No. C 03-03252 WHA

**ORDER GRANTING SECURITIES
AND EXCHANGE COMMISSION'S
MOTION FOR SUMMARY
JUDGMENT**

**INTRODUCTION**

      Pro se defendant Oliver Hilsenrath pled guilty to and was convicted of securities fraud

and tax evasion.  In this related civil action, plaintiff Securities and Exchange Commission filed

suit against Hilsenrath and his co-defendant David S. Klarman for engaging in securities fraud.

The SEC sought a permanent injunction and legal and other equitable relief.  The claims against

Klarman have been settled since June 2005.  The SEC now moves for partial summary

judgment on some of the claims against Hilsenrath in the complaint.  The motion is made on the

ground that Hilsenrath's plea agreement and other facts establish that there are no genuine

disputes of material fact with respect to these claims, and, as a matter of law, partial summary

judgment should be granted in favor of the SEC.  For the reasons stated below, the motion is

**GRANTED**.

**United States District Court**
For the Northern District of California

**STATEMENT**

From August 1996 to March 2000, defendant Oliver Hilsenrath was the president, chief executive officer, and director of U.S. Wireless Corporation, a publicly-traded company headquartered in California that developed and sold location-based information and services. Hilsenrath also had a beneficial ownership interest in Telecom Associates, an off-shore corporation, which he failed to disclose to the board of directors of U.S. Wireless.

From August 1997 through January 2000, Hilsenrath directed U.S. Wireless to wire transfer $12,000 per month to Telecom on twenty-nine separate occasions, for a total of $348,000 (Gilmour Decl. Exhs. 1–29; Yun Decl. Exh. 6). None of the U.S. Wireless Form 10-KSB annual reports for the fiscal years 1998, 1999, and 2000 described the transfers to Telecom or Hilsenrath's relationship with Telecom. Hilsenrath signed these reports (Yun Decl. ¶¶ 4–7; Exh. 3 at 40–41 and 68–69; Exh. 4 at 33–34; Exh. 5 at 57–59 and 99–100).[1]

In the company's amended annual report for the fiscal year ending on March 31, 2001, U.S. Wireless stated, "As a result of the investigation, the Company determined that certain transactions had been improperly recorded in the Company's historical financial statements either as compensation expense or as offering costs related to financing activities, based upon representations by the Company's former Chief Executive Officer and former General Counsel. In addition, the Company determined that these transactions had not been properly disclosed as related party transactions" (Yun Decl. Exh. 6 at 76). The report also announced that Hilsenrath had been terminated.

The United States Attorney's Office filed an indictment against Hilsenrath and Klarman on July 10, 2003. Four days later, the SEC filed its complaint against them. The claims at issue

---

[1] Hilsenrath objects to the under-seal declaration of Neil Gilmour on the ground that "those records ranging from 1997–1999 were sent to [Gilmour's] office by an unidentified party after 2002 and he declares that the copies are copies of that unidentified party's mailed documents. Gilmour is no custodian of records nor does he state the source of the documents nor can he vouch to their authenticity" (Opp. 13). This order disagrees and finds that Gilmour's declaration is admissible. Gilmour was the managing director of Executive Sounding Board Associates, Inc. ("ESBA"), which was appointed as the liquidating agent of the Liquidating Trust of U.S. Wireless. ESBA's job was to liquidate the remaining assets of U.S. Wireless and to resolve the claims filed against U.S. and its related debtors. In this capacity, the Liquidating Trust received and stored business records of U.S. Wireless that were in the possession of the Chapter 11 debtors. Gilmour testified to these facts in a sworn declaration.

United States District Court

For the Northern District of California

are as follows.  The second claim charged him with violating Section 10(b) of the Securities

Exchange Act of 1934 and Rule 10b-5 when he made material misstatements and omissions in

failing to disclose the transfer of payments from U.S. Wireless to Telecom.  The third claim

charged Hilsenrath with violating Section 13(b)(5) of the Exchange Act and Rule 13b2-1 when

he falsified U.S. Wireless' books and records in connection to the Telecom funds.  The fourth

claim charged Hilsenrath  with aiding and abetting violations of Section 13(a) of the Exchange

Act and Rules 12b-20, 13a-1, and 13a-13 when he did not disclose related-party transactions

(the Telecom payments) in U.S. Wireless' filing of periodic reports with the SEC.  The fifth

claim charged him with aiding and abetting violations of Section 13(b)(2)(A) of the Exchange

Act when he incorrectly recorded related-party transactions (like the ones with Telecom)

as arm's-length transactions.  The sixth claim charged Hilsenrath with violating Rule 13b2-2.

He allegedly made materially false or misleading statements to U.S. Wireless auditors relating

to their audit of the company's financial statements.  He did not disclose to the auditors his

ownership interest in Telecom, which would have rendered U.S. Wireless' payments to

Telecom related-party transactions.  For relief, the SEC requested a permanent injunction

enjoining Hilsenrath from further violations of securities laws, disgorgement of wrongfully-

obtained benefits (including prejudgment interest), and civil penalties.[2]

The SEC settled its claims against co-defendant Klarman in June 2005.  On February 6,

2007, in a separate criminal prosecution, Hilsenrath pled guilty to securities fraud in violation of

15 U.S.C. 78ff and tax evasion in violation of 26 U.S.C. 7201.  He stated in his plea agreement

(*United States v. Oliver Hilsenrath*, Case No. CR 03-0213 WHA, Dkt. No. 366 at ¶ 1):

> I agree that the elements of the offense of securities fraud are as
> follows: (1) I made or caused to be made untrue, false or
> misleading statements of material fact in reports or documents
> required to be filed under the Securities and Exchange Act of 1934
> and the rules and regulations thereunder; and (2) I made or caused
> to be made these untrue, false or misleading statements knowingly
> and willfully.  I agree that the elements of the offense of tax
> evasion are as follows: (1) I owed more federal income tax for the
> calendar year 1998 than was declared on my income tax return;
> (2) I knew that more federal income tax was owed than was

---

[2]  The complaint also alleges that Hilsenrath transferred funds to other offshore entities.  The SEC
moves for partial summary judgment *only* with respect to the Telecom payments.

**United States District Court**
For the Northern District of California

declared due on my income tax return; (3) I made an affirmative attempt to evade or defeat an income tax; and (4) in attempting to evade or defeat such additional tax, I acted willfully.

In his plea agreement, defendant also agreed that, *inter alia*, the following facts were true (*id.* at ¶ 2):

Under SEC regulations, I knew that, as CEO of U.S. Wireless, I could not make materially false and misleading statements and omissions to the company and its accountants in connection with the preparation of U.S. Wireless Corporation's Form 10-KSB annual reports that were filed with the SEC.

In fiscal year ending March 31, 1998, in order to avoid paying taxes, I sent $12,000 per month of my salary to an account at Matheson Bank (Jersey) Limited, which was located in Jersey (the Channel Islands) and which was in the name of Telecom Associates. I was the beneficial owner of Telecom Associates. I agree that, prior to the filing of the U.S. Wireless Corporation Form 10-KSB for fiscal year 1998, I did not disclose to U.S. Wireless Corporation's auditors that I had an ownership interest in Telecom Associates. By failing to disclose this fact, I caused U.S. Wireless Corporation to file a materially untrue, false, and misleading Form 10-KSB for the fiscal year ending March 31, 1998.

I sent a total of $144,000 to Telecom Associates in calendar year 1998. I did not report these taxable earnings on my federal income tax return, and thus I under-reported my income and thereby evaded taxes on the money that I sent to the Telecom Associates account. I agree that I owed more federal income tax for 1998 than was declared on my return, and I knew it at the time I signed and filed my return.

This order notes that Hilsenrath's plea agreement referred to two sets of numbers, which overlap: (i) the funds sent to Telecom in the fiscal year ending on March 31, 1998, and (ii) the $144,000 total sent to Telecom in calendar year 1998. For the fiscal year ending on March 31, 1998 (which encompassed the period between August 1997 through March 1998), Hilsenrath made seven payments of $12,000, for a total of $84,000 (Gilmour Decl. Exhs. 1–7). According to the plea agreement, Hilsenrath did not disclose his ownership interest in Telecom for this time period. For calendar year 1998, Hilsenrath made twelve payments of $12,000, for a total of $144,000 (*id.* at Exhs. 6–17). The plea agreement states that he failed to report this amount on his federal income taxes. Consequently, the plea agreement covers seventeen total payments of $12,000 each; Hilsenrath transferred a total amount of $204,000 to Telecom from August 1997 to December 1998.

4

1    During the plea colloquy, Hilsenrath reiterated under oath all of these facts (Yun Decl.

2    Exh. 2 at 7, 22–23).  A judgment of conviction was then entered against Hilsenrath for

3    securities fraud and tax evasion on July 9, 2007.  He was sentenced to twelve months of home

4    confinement with an electronic monitoring program and five years of probation.  He was also

5    ordered to pay approximately two-million dollars in restitution, which had been frozen by the

6    Swiss authorities.  In his opposition memorandum, Hilsenrath has acknowledged that "the facts

7    in the USA-Hilsenrath plea are accurate" (Opp. 5).

8                                                   **ANALYSIS**

9    Summary judgment is granted when "the pleadings, depositions, answers to

10   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

11   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

12   matter of law."  FRCP 56(c).  A district court must determine, viewing the evidence in the light

13   most favorable to the nonmoving party, whether there is any genuine issue of material fact.

14   *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007).  A genuine issue

15   of fact is one that could reasonably be resolved, based on the factual record, in favor of either

16   party.  A dispute is "material" only if it could affect the outcome of the suit under the governing

17   law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).[3]

18   The moving party "has both the initial burden of production and the ultimate burden of

19   persuasion on a motion for summary judgment."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

20   *Cos., Inc.*, 210 F. 3d 1099, 1102 (9th Cir. 2000).  When the moving party meets its initial

21   burden, the burden then shifts to the party opposing judgment to "go beyond the pleadings and

22

23

24

25

26

27

28

[3]  Unless indicated otherwise, internal citations are omitted from all cites.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).[4]

Hilsenrath pled guilty to and was convicted of securities fraud and tax evasion. The SEC argues that the facts underlying the conviction should be given preclusive effect, thereby establishing Hilsenrath's liability for securities fraud in the instant action. The Ninth Circuit, however, applies collateral estoppel sparingly. According to *United States v. Real Property Located at Section 18*, 976 F.2d 515, 518 (9th Cir. 1992):

> Our circuit has used the following criteria to analyze issue preclusion in a case involving a criminal matter: The criteria for the application of collateral estoppel are: (1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom the collateral estoppel is asserted was a party or in privity with a party to the prior trial.

The Ninth Circuit further stated, "Although it is settled law in this circuit that a guilty plea may be used to establish issue preclusion in a subsequent civil suit, preclusion has only been allowed where an element of the crime to which the defendant pled guilty or of which he was convicted was at issue in the second suit." *Id.* at 519.

In his plea agreement, Hilsenrath admitted that he "made or caused to be made untrue, false or misleading statements of material fact in reports or document required to be filed under the Securities and Exchange Act of 1934 and the rules and regulations thereunder," and that he did so "knowingly and willfully" (*United States v. Oliver Hilsenrath*, Case No. CR 03-0213 WHA, Dkt. No. 366 at ¶ 1). The prior conviction was for a serious offense such that Hilsenrath was adequately motivated to fully litigate the criminal charge. The plea agreement stated that the maximum penalties for securities fraud in violation of 15 U.S.C. § 78ff were: 10 years in prison, one million dollars in fines, three years supervised release, and restitution. There is no

---

[4] Hilsenrath argues that the SEC has not been able secure an expert opinion to support its motion for summary judgment. Expert opinion is not necessary, however. The SEC need only provide other evidence in the form of depositions, answers to interrogatories, admissions, or affidavits.

1    dispute as to the validity of Hilsenrath's conviction, nor are there questions as to whether

2    Hilsenrath was a party to the first litigation.

3         The remaining question is the third prong of the *Real Property* test — whether the issue

4    in the subsequent civil matter had actually been litigated and necessarily decided in the prior

5    conviction.  The plea agreement covered Hilsenrath's mental state, the Telecom payments,

6    his ownership interest in Telecom, and his failure to disclose to U.S. Wireless any of this

7    information.  The "relevant time period" for the plea agreement, however, was different from

8    the one mentioned in the SEC's complaint.  The plea agreement for Hilsenrath's securities fraud

9    addressed the time period between August 1997 and March 1998.  The complaint, on the other

10   hand, covered August 1997 through January 2000.   The plea agreement therefore cannot be

11   given full preclusive effect for the time period past March 1998.  Nonetheless, whether or not

12   collateral estoppel applies, the plea agreement is still extremely probative as a party admission

13   and evidence of securities fraud, as discussed below.[5]

14        **A.    CLAIM TWO: LIABILITY UNDER SECTION 10(B) AND RULE 10B-5.**

15        The SEC alleges that Hilsenrath made material misstatements or omissions with respect

16   to the Telecom payments in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

17   These provisions render unlawful for any person, by the use of any means or instrumentality of

18   interstate commerce, or of the mails, and with scienter:

19
20        (a) To employ any device, scheme, or artifice to defraud,

21        (b) To make any untrue statement of a material fact or to omit to
          state a material fact necessary in order to make the statements
22        made, in the light of the circumstances under which they were
          made, not misleading, or

23        (c) To engage in any act, practice, or course of business which
          operates or would operate as a fraud or deceit upon any person,
24        in connection with the purchase or sale of any security.

25   _____

26        [5]  Hilsenrath cites *Guillermety v. Gonzalez*, 491 F. Supp. 2d 199 (D. Puerto Rico 2006), to argue
     against the SEC's use of the guilty plea to collaterally estop him from defending himself.  This case is
27   inapposite.  Whereas the Ninth Circuit in *Real Property* discussed the government's ability to invoke collateral
     estoppel (as in the instant action), the district court in *Guillermety* discussed private plaintiffs using a
28   defendant's guilty plea to establish negligence in a wrongful-death action.  Furthermore, this order treats
     Hilsenrath's plea agreement as a party admission and evidence of securities violations, regardless of its
     preclusive effect.

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1   17 C.F.R. 240.10b-5.  *See also* 15 U.S.C. 78j(b).  The Ninth Circuit "has held that recklessness

2   may satisfy the element of scienter in a civil action for damages under § 10(b) and Rule 10b-5."

3   *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568–69 (9th Cir. 1990).  Furthermore,

4   making false and misleading material statements in a SEC filing can violate Section 10(b)

5   and Rule 10b-5 by operating as a "fraud on the market."  *Provenz v. Miller*, 102 F.3d 1478,

6   1489 (9th Cir. 1996).

7          Hilsenrath argues that he cannot be liable under Section 10(b) because the SEC has not

8   provided any evidence showing how the Telecom transfers caused injury to stockholders of

9   U.S. Wireless.  He merely transferred portions of his legitimate salary to Telecom, which had

10  no bearing whatsoever on the company or shareholders, he says.  This is a misstatement of the

11  law.  The SEC does not have to prove reliance or injury in a SEC action seeking injunctive

12  relief against Section 10(b) and Rule 10b-5 violations.  Instead, reliance is a required element in

13  a private cause of action for damages.  *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362–64

14  (9th Cir. 1993).

15         Here, the SEC has provided evidence that U.S. Wireless was a publicly-traded company.

16  Hilsenrath directed U.S. Wireless to transfer $12,000 per month to Telecom from August 1997

17  through January 2000.  These transfers, which totaled $348,000, and Hilsenrath's ownership

18  interest in Telecom were not disclosed in any of the company's Form 10-KSB annual reports

19  for the fiscal years 1998, 1999, and 2000.  The plea agreement showed that the $84,000 (for

20  fiscal year 1998) satisfied the standard for "materiality," so the greater amount of $264,000 (for

21  fiscal years 1999 and 2000) certainly met that standard as well.[6]  The plea agreement constituted

22  _____

23         [6] Hilsenrath disputes the "materiality" of his wrongdoing.  He says that the Telecome payments were
24  "immaterial" to auditors, shareholders, and the market.  His argument regarding materiality is misplaced.
    *First*, he has already admitted to having made material misstatements and omissions in his plea agreement.
25  *Second*, Hilsenrath misstates the standard for materiality.  Even if the allocation of his salary had little actual
    impact on investors or the market, Hilsenrath still caused U.S. Wireless to violate its duty to disclose
    related-party transactions under Generally Accepted Accounting Principles and SEC rules and regulations.
26         *Third*, Hilsenrath did not present any admissible evidence on materiality (or lack thereof).  He presents
    the United States Probation Department's Presentence Report ("PSR").  The PSR is inadmissible because it is
27  based on the hearsay opinions of the probation officer.  It is also a confidential document that explicitly restricts
    its use: "Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by
28  the Bureau of Prisons is authorized by the United States District Court solely to assist administering the
    offender's prison sentence . . . and other limited purposes, including deportation proceedings and federal

8

United States District Court

For the Northern District of California

1    admissions that Hilsenrath acted with scienter when he made the earlier misleading statements

2    of material fact from August 1997 through March 1998.  Considering that Hilsenrath possessed

3    the requisite scienter at least through March 1998 and he engaged in the same conduct through

4    January 2000, this order finds that the SEC has met its initial burden in showing that he

5    committed these acts with scienter through January 2000.  The burden now shifts to Hilsenrath

6    to provide evidence that there is a genuine issue for trial.  He has not done so.

7    Summary judgment is therefore granted on this claim.

8         **B.     CLAIM THREE: LIABILITY UNDER SECTION 13(B)(5)
               AND RULE 13B2-1.**

9

10        The complaint alleges that Hilsenrath knowingly falsified U.S. Wireless' books,

11   records and accounts.  Section 13(b)(5) of the Exchange Act provides that "[n]o person shall

12   knowingly circumvent or knowingly fail to implement a system of internal accounting controls

13   or knowingly falsify any book, record, or account."  15 U.S.C. 78m(b)(5).  Rule 13b2-1 states,

14   "No person shall directly or indirectly, falsify or cause to be falsified, any book, record or

15   account subject to Section 13(b)(2)(A) of the Securities Exchange Act."  In contrast to Section

16   13(b)(5), the rule does not require a showing of scienter.  17 C.F.R. 240.13b2-1.

17        Hilsenrath admitted in his plea agreement that, "[u]nder SEC regulations, I knew that,

18   as CEO of U.S. Wireless, I could not make materially false and misleading statements and

19   omissions to the company and its accountants in connection with the preparation of U.S.

20   Wireless Corporation's Form 10-KSB annual reports that were filed with the SEC."  He said

21   that, in the fiscal year ending on March 31, 1998, he sent $12,000 per month to Telecom,

22   in which he had an ownership interest.  He did not disclose this fact to the company's auditors,

23   causing the company to make a materially false filing with the SEC (*United States v. Oliver*

24   _____

25   investigations directly related to terrorists activities" (Hilsenrath Decl. Exh. 1).  Hilsenrath additionally relies on
     an "expert report" by John Maine (Hilsenrath Decl. Exh. 3).  The "expert report" is not sworn under oath.

26   It lacks probative value because it vaguely states that Mr. Maine "would not have considered it material that
     Mr. Hilsenrath received a portion of his salary as a consulting contract paid to an offshore entity.  This opinion

27   is based on my perception that investors focus predominately on the prospects of the company and only on any
     alleged management improprieties if those acts endanger the company" (*ibid.*).  The rest of the exhibits,

28   the letter between Assistant United States Attorney Laurel Beeler and the USPO, the "response to SEC informal
     inquiry letter," and the interview notes of financial fraud investigator P. Villanueuva, are all inadmissible
     because they are hearsay, not authenticated, and lack foundation (Hilsenrath Decl. Exh. 4–6).

1  *Hilsenrath*, Case No. CR 03-0213 WHA, Dkt. No. 366 at ¶ 2).  The record further shows that

2  Hilsenrath made additional payments to Telecom through fiscal years 1999 and 2000.  Yet,

3  none of the U.S. Wireless Form 10-KSB annual reports for 1998, 1999, or 2000 reflected any

4  transfers or Hilsenrath's relationship with Telecom.  This order finds that the SEC has met its

5  burden of showing a violation of Section 13(b)(5) and Rule 13b2-1.  After the burden shift,

6  however, Hilsenrath failed to demonstrate a dispute of material fact.  Summary judgment is

7  granted on claim three of the SEC complaint.

8      **C.      CLAIM FOUR: LIABILITY FOR AIDING AND ABETTING**
         **UNDER SECTION 13(A) AND RULES 12B-20, 13A-1, AND**
9        **13A-13.**

10  According to the complaint, Hilsenrath aided and abetted violations committed by U.S.

11  Wireless when the company filed annual and quarterly reports (Form 10-KSB and Form

12  10-QSB) that contained material misstatements and omissions.  When pursuing injunctive relief

13  for an aiding and abetting securities law violation, the SEC must show: (i) the existence of an

14  independent primary violation; (ii) actual knowledge by the alleged aider and abettor of the

15  primary violation and of his own role in furthering it; and (iii) substantial assistance in the

16  commission of the primary violation.  *SEC v. Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996).

17  Pursuant to Section 13(a) of the Exchange Act, issuers of securities must file with the

18  SEC periodic reports containing information prescribed by its rules and regulations.  15 U.S.C.

19  78m(a).  Rules 13a-1 and 13a-13 require issuers to file annual and quarterly reports with the

20  SEC.  17 C.F.R. 240.13a-1; 17 C.F.R. 240.13a-13.  In addition to the information expressly

21  required to be included in these statements, Rule 12b-20 requires "further material information,

22  if any, as may be necessary to make the required statements, in the light of the circumstances

23  under which they are made not misleading."  17 C.F.R 240.12b-20.

24  The SEC charges Hilsenrath with having aided and abetted U.S. Wireless' violation of

25  its duty to file accurate periodic reports with the SEC, pursuant to Section 13(a) and related

26  rules.  Hilsenrath, on the other hand, argues that he cannot possibly be liable for aiding and

27  abetting the violation because there was never any primary violator; U.S. Wireless was never

28  charged with securities fraud.

United States District Court

For the Northern District of California

10

United States District Court

For the Northern District of California

This order disagrees with Hilsenrath. The SEC need not charge U.S. Wireless for a violation of Section 13(a) and the related rules before going after Hilsenrath for aiding and abetting liability. In *Ponce v. SEC*, 345 F.3d 722 (9th Cir. 2003), an accountant was deemed to be an aider and abettor when he caused his company to make false filings with the SEC. The court of appeals supported its reasoning with the underlying facts:

> The first prong of the aider and abettor test is easily met.
> [The company] filed the required reports that contained the false
> and misleading financial statements, along with [the accountant's]
> audit certification. Moreover, [the accountant] does not dispute his
> role in preparing the financial statements or performing the audits.
> Second, while [the accountant] may not have conceived them as
> false or misleading at the time he made them, [the accountant]
> certainly had knowledge, or at least was reckless in not
> recognizing, the misleading nature of the statements.
> [The accountant] undeniably played a major role in preparing and
> certifying the financial statements, and as [the company's]
> accountant and auditor, [he] not only facilitated [the company's]
> reporting and record keeping responsibilities to the SEC, but he
> played an essential and integral part of the process. Indeed,
> Exchange Act Section 13(a) and Rule 13a-1 require that a
> registrant's reports be filed with audit certification. Accordingly,
> [the accountant] also provided substantial assistance to [the
> company's] primary violation of Sections 13(a) and 13(b)(2),
> by preparing the financial statements that were eventually filed
> with both the quarterly and annual reports, as well as auditing and
> certifying the reports that [the company] filed. We hold that there
> is substantial evidence to support the factual findings underlying
> the SEC's conclusion that [the accountant] aided and abetted [the
> company's] violation of Exchange Act Sections 13(a), 13(b)(2)
> and corresponding regulations, and that the conclusion itself is not
> arbitrary or capricious.

As stated, nowhere did the Ninth Circuit require that the SEC sue the primary violator company before charging the defendant with aiding and abetting. Rather, a primary violator just had to have filed the required reports that contained false and misleading financial statements. *See also SEC v. Berry*, 2008 WL 2002537, *12 (N.D. Cal. 2008) (Whyte, J.) ("[defendant] argues that she should not be held liable for assisting her employer to break the law while her employer is let off the hook. While the argument may have some equitable appeal, it has no legal basis").

In the instant action, U.S. Wireless was a primary violator. Section 13(a) is violated if the report is incomplete, inaccurate, or untimely. "The reporting provisions of the Exchange Act are clear and unequivocal, and they are satisfied only by the filing of complete, accurate, and timely reports." *SEC v. Savoy Industries, Inc.*, 587 F.2d 1149, 1165 (D.C. Cir. 1978).

United States District Court
For the Northern District of California

1    Furthermore, scienter is not an element of civil claims under Section 13.  *SEC v. McNulty*,

2    137 F.3d 732, 740–41 (2d Cir. 1998).  In its amended annual report to the SEC for fiscal year

3    2001, the company announced that it had improperly recorded in previous filings the

4    transactions at issue.  Hilsenrath also stated in his plea agreement that "[b]y failing to disclose

5    [his ownership interest in Telecom], [he] caused U.S. Wireless Corporation to file a materially

6    untrue, false, and misleading Form 10-KSB for the fiscal year ending March 31, 1998"

7    (*United States v. Oliver Hilsenrath*, Case No. CR 03-0213 WHA, Dkt. No. 366 at ¶ 2).

8    This was enough to establish U.S. Wireless as a primary violator.

9           The Ninth Circuit also requires that there be actual knowledge by the alleged aider and

10   abettor of the primary violation and of his own role in furthering it, and that he substantially

11   assist in the commission of the primary violation.  Here, the SEC has provided evidence of

12   actual knowledge.  Hilsenrath admitted in his plea agreement that he "made or caused to be

13   made untrue, false or misleading statements of material fact in reports or documents required to

14   be filed under the Securities and Exchange Act of 1934 and the rules and regulations

15   thereunder" and that he did so "knowingly and willfully" (*United States v. Oliver Hilsenrath*,

16   Case No. CR 03-0213 WHA, Dkt. No. 366 at ¶ 1).  In addition, the amended annual report for

17   fiscal year 2001 and Hilsenrath's plea agreement show that he lent "substantial assistance"

18   to the false reporting.  "The term 'substantial assistance' has been interpreted to include

19   'participation in the editing' of information for the purpose of marketing securities."  *Fehn*, 97

20   F.3d at 1293.  Amended annual report stated that the incorrect filings were "based upon

21   representations by the Company's former Chief Executive Officer [Hilsenrath] and former

22   General Counsel [Klarman]."  In sum, the SEC has sustained its burden of showing that

23   Hilsenrath aided and abetted U.S. Wireless' violations of Section 13(a) and related rules.

24   Hilsenrath, in turn, has not.  Summary judgment is granted on this claim.

25           **D.    CLAIM FIVE: LIABILITY FOR AIDING AND ABETTING
              UNDER SECTION 13(B)(2)(A).**

26

27           The SEC further charges Hilsenrath with having aided and abetted U.S. Wireless'

     violation of its duty to maintain accurate books and records of accounts.  The standard for
28
     aiding and abetting is as described above.  According to Section 13(b)(2)(A) of the Exchange

United States District Court

For the Northern District of California

1    Act, every issuer is required to "make and keep books, records, and accounts, which, in

2    reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of

3    the issuer." 15 U.S.C. 78m(b)(2)(A).

4            For the same reasons stated in the previous section, the SEC has provided sufficient

5    evidence on this claim.  The factual record shows that Hilsenrath did not disclose the Telecom

6    transfers or his ownership interest in Telecom to U.S. Wireless.  The true nature of the transfers

7    were mischaracterized because they were not treated as related-party transactions; rather, they

8    were recorded as arm's-length transactions.  U.S. Wireless then filed inaccurate reports with the

9    SEC and maintained erroneous books and record until 2000.  Accordingly, summary judgment

10   is granted on this claim.

11           **E.      CLAIM SIX: LIABILITY UNDER RULE 13B2-2.**

12           Rule 13b2-2 prohibits a director or officer from making or causing to be made a

13   materially false or misleading statement or omission to an accountant in connection with an

14   audit, examination of financial statements, or the preparation or filing of any document or report

15   required to be filed with the SEC.  17 C.F.R. 240.13b2-2.

16           According to Hilsenrath's plea agreement, he "knew that, as CEO of U.S. Wireless,

17   [he] could not make materially false and misleading statements and omissions to the company

18   and its accountants in connection with the preparation of" SEC filings.  Nonetheless, he then

19   failed to "disclose to U.S. Wireless Corporation's auditors that [he] had an ownership interest in

20   Telecom Associates" (*United States v. Oliver Hilsenrath*, Case No. CR 03-0213 WHA, Dkt.

21   No. 366 at ¶ 2).  The annual reports for 1998, 1999, and 2000 never reflected the Telecom

22   payments or Hilsenrath's ownership interest, so it could be inferred that Hilsenrath lied to

23   auditors (or other individuals who gave information to the auditors) about his actions regarding

24   the $12,000 monthly payment during these periods.

25           Hilsenrath argues that there is no evidence showing that he had any contact with

26   auditors or participated in the production of financial reports.  This argument does not help

27   Hilsenrath.  Rule 13b2-2 extends liability to an officer or director "making or causing to be

28   made" material misstatements and omissions.  Hilsenrath therefore did not need to speak

United States District Court

For the Northern District of California

1  directly with auditors or accountants in order to be found liable under this regulation.  It is

2  enough that he causes another person to provide material misstatements or omissions.  The SEC

3  is entitled to summary judgment on this claim.

4                                                    **CONCLUSION**

5            For the foregoing reasons, the SEC's motion for partial summary judgment on claims

6  two, three, four, five, and six is **GRANTED**.  Hilsenrath raises other challenges to disgorgement,

7  civil penalties, and a lifetime officers and directors' bar.  These matters have not been raised as

8  part of this motion for partial summary judgment so they are deemed moot.

9            The SEC did not move for summary judgment on claims unrelated to the Telecom

10  transfers (*e.g.*, Borazon transfers).  Nor did the SEC address the first claim, which alleges the

11  violation of Section 17(a) of the Securities Act.  These claims remain in the case.

12

13            **IT IS SO ORDERED.**

14

15  Dated:  May 30, 2008.                          _____

16                                                    WILLIAM ALSUP
                                                     UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

14