1
2
3
4
5
6         IN THE UNITED STATES DISTRICT COURT

7         FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
9
10   SECURITIES AND EXCHANGE                    No. C 03-03252 WHA
     COMMISSION,
11
                     Plaintiff,
12
          v.                                   **ORDER PARTIALLY GRANTING
13                                             PLAINTIFF'S MOTION FOR
     OLIVER HILSENRATH and DAVID S.            PERMANENT INJUNCTION,
14   KLARMAN,                                  OFFICER AND DIRECTOR BAR,
                                               AND CIVIL PENALTIES AGAINST
15                   Defendants.               DEFENDANT HILSENRATH**
                                        /
16
17                              **INTRODUCTION**

18          Pro se defendant Oliver Hilsenrath pled guilty to and was convicted of securities fraud and

19   tax evasion.  In this related civil action, plaintiff Securities and Exchange Commission filed suit

20   against Hilsenrath and co-defendant David S. Klarman for engaging in securities fraud.  The SEC

21   now seeks a permanent injunction from future violations, an officer and director bar, and civil

22   penalties against defendant Hilsenrath.

23                               **STATEMENT**

24          From August 1996 to March 2000, defendant Oliver Hilsenrath was the president,

25   chief executive officer, and director of U.S. Wireless Corporation, a publicly traded company

26   headquartered in California that developed and sold location-based information and services.

27   Hilsenrath also had a beneficial ownership interest in Telecom Associates, an off-shore

28   corporation, which he failed to disclose to the board of directors of U.S. Wireless.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   From August 1997 through January 2000, Hilsenrath directed U.S. Wireless to wire-transfer

2   $12,000 per month to Telecom on 29 separate occasions for a total of $348,000.  None of the

3   U.S. Wireless Form 10-KSB annual reports for fiscal years 1998, 1999 and 2000 described the

4   transfers to Telecom or Hilsenrath's relationship with Telecom.  Hilsenrath signed these reports.

5        The SEC settled its claims against co-defendant Klarman in June 2005.  In a separate

6   criminal prosecution on February 6, 2007, Hilsenrath pled guilty to securities fraud in violation of

7   15 U.S.C. 78ff and tax evasion in violation of 26 U.S.C. 7201.  He stated in his plea agreement

8   (*United States v. Oliver Hilsenrath*, Case No. CR 03-0213 WHA, Dkt. No. 366 at ¶ 1):

9           I agree that the elements of the offense of securities fraud are as
            follows:  (1) I made or caused to be made untrue, false or
10          misleading statements of material fact in reports or documents
            required to be filed under the Securities and Exchange Act of 1934
11          and the rules and regulations thereunder; and (2) I made or caused
            to be made these untrue, false or misleading statements knowingly
12          and willfully.  I agree that the elements of the offense of tax
            evasion are as follows:  (1) I owed more federal income tax for the
13          calendar year 1998 than was declared on my income tax return;
            (2) I knew that more federal income tax was owed than was
14          declared due on my income tax return; (3) I made an affirmative
            attempt to evade or defeat an income tax; and (4) in attempting to
15          evade or defeat such additional tax, I acted willfully.

16       In his plea agreement, defendant also agreed that, *inter alia*, the following facts were

17   true (*id.* at ¶ 2):

18          Under SEC regulations, I knew that, as CEO of U.S. Wireless, I
            could not make materially false and misleading statements and
19          omissions to the company and its accountants in connection with
            the preparation of U.S. Wireless Corporation's Form 10-KSB
20          annual reports that were filed with the SEC.  In fiscal year ending
            March 31, 1998, in order to avoid paying taxes, I sent $12,000 per
21          month of my salary to an account at Matheson Bank (Jersey)
            Limited, which was located in Jersey (the Channel Islands) and
22          which was in the name of Telecom Associates.  I was the
            beneficial owner of Telecom Associates.  I agree that, prior to the
23          filing of the U.S. Wireless Corporation Form 10-KSB for fiscal
            year 1998, I did not disclose to U.S. Wireless Corporation's
24          auditors that I had an ownership interest in Telecom Associates.
            By failing to disclose this fact, I caused U.S. Wireless Corporation
25          to file a materially untrue, false, and misleading Form 10-KSB for
            the fiscal year ending March 31, 1998.  I sent a total of $144,000 to
26          Telecom Associates in calendar year 1998.  I did not report these
            taxable earnings on my federal income tax return, and thus I
27          under-reported my income and thereby evaded taxes on the money
            that I sent to the Telecom Associates account.  I agree that I owed
28          more federal income tax for 1998 than was declared on my return,
            and I knew it at the time I signed and filed my return.

2

This Court granted summary judgment in this related civil matter for all but one claim brought by plaintiff, and the sole remaining claim was later voluntarily dismissed. Plaintiff now seeks the relief noted above.

**ANALYSIS**

**1.   PERMANENT INJUNCTION.**

The Securities Exchange Act of 1934 provides court authority to grant the Commission's request for a permanent injunction from committing future violations of the Securities Exchange Act. 15 U.S.C. 78u(d)–(e). To obtain a permanent injunction, the SEC

> ha[s] the burden of showing there [is] a reasonable likelihood of future violations of the securities laws. . . In "predicting the likelihood of future violations," [the Court] must assess "the totality of the circumstances surrounding the defendant and his violations," and we consider such factors as (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; (5) and the sincerity of his assurances against future violations.

*SEC v. Fehn*, 97 F.3d 1276, 1295–6 (9th Cir. 1996).

There is no doubt that a high degree of scienter is present here. Hilsenrath admitted in his plea agreement that his actions in transferring the money off-shore and signing the inaccurate Form 10-KSB for those years were done knowingly and willfully. Hilsenrath's current attempts to argue that his actions were merely clumsy or inappropriate are contrary to his plea agreement and are given no weight. The first factor weighs heavily in favor of granting an injunction.

There is some contention as to the recurrent nature of the infraction. Plaintiff does not argue that the act of sending the money off-shore to avoid income taxes is a violation of the Securities Exchange Act. Instead, plaintiff claims that the ongoing concealment of these actions led to the company filing an inaccurate Form 10-KSB, which is the actual violation. Hilsenrath, however, only admitted to causing the company to file a materially false Form 10-KSB for 1998. Plaintiff did not pursue claims against Hilsenrath for false Form 10-KSB reports for 1999 and 2000. Nevertheless, Hilsenrath engaged in a continuous pattern of deceit, demonstrated by his 29 illegal wire-transfers, that ultimately resulted in the inaccurate 1998

1    report.  The recurrent nature of Hilsenrath's underlying actions in the violation means that the

2    second prong weighs slightly in favor of granting an injunction.

3         The recognition of the wrongful nature of the act and the sincerity of assurances against

4    future violations are closely related factors.  While Hilsenrath has admitted to committing the

5    violation, there is no doubt that Hilsenrath acts the part of a victim.  He asserts that his actions

6    were done in ignorance and not with malice.  That said, nothing is more basic as the duty of an

7    officer of a publicly traded company to make truthful, accurate reports.  Hilsenrath's claims of

8    ignorance ring hollow for such an apparent duty.  The defense that more experienced and

9    knowledgeable individuals than Hilsenrath were committing similar acts only further highlights

10   a denial of responsibility for his central role in the violation, and provide a glaring counter-point

11   to his assurances against future violations.  The third and fifth factors weigh heavily in favor of

12   granting an injunction.

13        With regard to the likelihood of future violations, Hilsenrath's statements that he will not

14   seek a position with reporting and accounting responsibilities are of dubious quality.  It may be

15   true that Hilsenrath's skill-set appear better suited for technology-oriented positions, and surely

16   this conviction will make it more difficult for defendant to obtain a position in which he could

17   commit these violations again.  Hilsenrath only states, however, that he will not "seek" a position

18   having these responsibilities.  He has not stated that he would be unwilling to accept another

19   position, if offered, with said duties.  If Hilsenrath were to eventually fill another position with

20   similar responsibilities to the one he previously held, there is a reasonable likelihood that future

21   violations will occur.  Accordingly, the fourth prong weighs slightly in favor of granting an

22   injunction.

23        On the whole, the evidence supports an injunction against violating securities laws.

24   Hilsenrath's actions showed a sufficient degree of scienter, probability of recurrence, and despite

25   the plea agreement, Hilsenrath has made no reliable acknowledgment of wrongdoing or

26   assurances against future violations.  Accordingly, this order permanently enjoins Hilsenrath

27   from committing future violations of the Securities Exchange Act.

28

**United States District Court**
For the Northern District of California

1

### 2. OFFICER AND DIRECTOR BAR.

The Securities Exchange Act also authorizes an order prohibiting, conditionally or

unconditionally, and permanently or for such period of time as it shall determine, any person

who employs manipulative devices such as those that violate Section 10(b) of the Exchange

Act or Rule 10b-5.  In determining whether to order the bar, a court may consider:

> (1) the "egregiousness" of the underlying securities law violation;
> (2) the defendant's "repeat offender" status; (3) the defendant's
> "role" or position when he engaged in the fraud; (4) the
> defendant's degree of scienter; (5) the defendant's economic stake
> in the violation; and (6) the likelihood that misconduct will recur.

*SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998) (quoting 15 U.S.C.

78(u)(d)(2)).

Four of the above six factors have been previously discussed.  The degree of scienter

weighs heavily in favor of a bar.  Hilsenrath's role was a central one and his actions were done

while he was CEO of the company, also weighing heavily in favor of a bar.  The "repeat

offender" status has been analyzed and Hilsenrath's recurrent concealment weighs slightly in

favor of a bar.  The likelihood that future misconduct will occur has been deemed as weighing

slightly against Hilsenrath, therefore in favor of a bar.

With regard to the "egregiousness" of the underlying securities law violation, this order

finds that the first prong does not weigh in favor of or against a bar.  While plaintiff argues that

these actions were over a three-year period, Hilsenrath has only admitted to one particular

misleading report for 1998, and plaintiff did not pursue its claims for any other year.  The actions

only indirectly affected investors, as it was not the inaccurate books that destroyed investors'

equity but rather the SEC's trading suspension to allow investigation into the company's books

and the company's subsequent bankruptcy.  The indirect nature of Hilsenrath's acts, however,

should not diminish the egregiousness of the violation.  Hilsenrath used his position of the

highest authority in the company to mislead the public as to the company's true financial state

in 1998.  Given these competing considerations, this order finds the first prong mostly neutral in

the analysis.

1    Regarding defendant's economic stake in the violation, Hilsenrath repeatedly argues that

2    there was no self-enrichment when he transferred the money off-shore to avoid income taxes.

3    This order finds this to be an absurd proposition.  When one actively avoids paying income taxes

4    by channeling funds off-shore, the sole reason is to avoid the personal costs of paying those

5    personal income taxes.  Yet Hilsenrath asserts that all unpaid taxes stayed with the company.

6    Unless the company calculated his taxes and deducted them before transferring the money, it is

7    difficult to believe that defendant did not have any financial gain in shipping his admittedly

8    legitimate salary overseas.  The fifth prong weighs in favor of a bar.

9    On balance, the evidence supports the finding that Hilsenrath is unfit to serve as an

10   officer or board member on any publicly traded company.  That Hilsenrath is unfit does not

11   necessarily require a lifetime bar as the remedy here.  The proper question is whether "a

12   conditional bar (*e.g.*, a bar limited to a particular industry) and/or a bar limited in time (*e.g.*, a bar

13   of five years) might be sufficient."  *SEC v. Patel*, 61 F.3d 137, 142 (2d Cir. 1995).  A shorter ban

14   is the more appropriate remedy.  This order issues an unconditional officer and director bar

15   against Hilsenrath of five years, to commence from the date of entry of this order.

16        **3.    CIVIL MONETARY PENALTIES.**

17   Finally, plaintiff requests civil penalties against defendant for violations of the securities

18   laws under 15 U.S.C. 78u(d)(3).  The statute lays out three tiers of punishment, the third of

19   which allows a district court to impose penalties up to the higher of the individual's gain or

20   $110,000 for each violation.  A person is subject to third-tier penalties when their violation

21   involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory

22   requirement; and . . . directly or indirectly resulted in substantial losses or created a significant

23   risk of substantial losses to other persons."

24   Hilsenrath clearly meets the criteria for a third-tier penalty.  His actions were admittedly

25   fraudulent and deceitful when he submitted the knowingly inaccurate Form 10-KSB.

26   In addition, this order has already found that defendant was at least indirectly responsible for

27   substantial losses to investors when the value of the company's stock plummeted while the SEC

28   investigated Hilsenrath's inaccurate reports.  Hilsenrath, in sum, abused his position of authority

1   to mislead the public.  This abuse ultimately caused the public financial harm and thus penalties

2   are appropriate.

3          That said, the full penalty under the statute is not warranted.  Hilsenrath, as stated,

4   was only indirectly responsible for the losses.  The only undisputed act in this case is the

5   inaccurate 1998 10-KSB form.  Plaintiff cites *SEC v. Henke*, 275 F. Supp. 2d 1075, 1086

6   (N.D. Cal. 2003), to support a $110,000 penalty for each of the five claims on which Hilsenrath

7   lost summary judgment.  In *Henke*, however, the court ordered $100,000 penalties for each of

8   five different claims that had numerous underlying acts as the basis for the defendant's violation

9   of the Securities Exchange Act.  Here, there are five claims as well, but with only one underlying

10  act that justifies monetary punishment.  This Court assesses a lesser, cumulative penalty of

11  $110,000 against Hilsenrath.

12                                  **CONCLUSION**

13         For the reasons state above, a permanent injunction is hereby **GRANTED** against

14  defendant Hilsenrath against committing any future violations of the Securities Exchange Act.

15  Defendant Hilsenrath is hereby **PROHIBITED** from serving in any official or board capacity on a

16  publically traded company for a period of five years.  Finally, defendant Hilsenrath is hereby

17  **ORDERED** to pay $110,000 in civil penalties.

18

19         **IT IS SO ORDERED.**

20

21  Dated:  June 26, 2009.

22                                                  WILLIAM ALSUP
                                                    UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

7